UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JEREMY FRANCIS and                    CIVIL ACTION NO. 6:09-cv-00425
DEIDRA FRANCIS

VERSUS                                MAGISTRATE JUDGE HANNA

GRT UTILICORP, INC. and               BY CONSENT OF THE PARTIES
DP MANUFACTURING, INC.

## MEMORANDUM  RULING

Pending before this Court is the motion for summary judgment that was filed by defendant GRT Utilicorp, Inc. (Rec. Doc. 91).  The motion is opposed. (Rec. Docs. 116, 129).  Oral argument was held on January 22, 2013.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## I.    FACTUAL  BACKGROUND

This lawsuit arises out of a workplace accident that occurred on February 11, 2008.   At that time, plaintiff Jeremy Francis was employed by Highway Technologies, Inc. and working as a laborer on a crew that was replacing guardrails on a highway near Winnfield, Louisiana.  To accomplish this task, Highway Technologies used a truck-mounted post driver to set and remove the vertical I-beams

to which the horizontal guardrails are then mounted.  A hydraulic arm extends out past the end of the truck and up into the air.  A "rail" or "rail assembly," into which an I-beam can be placed, extends from the top of the arm to the ground.  An "adaptor cap" or "anvil adaptor" fits onto the top of the I-beam.  When a post is driven, a 1,250 lb. weight or "hammer" drops and strikes the top of the adaptor cap in order to drive the I-beam into the ground.  Where the I-beam meets the ground, there is a "footer" or "foot adaptor" that latches onto the I-beam and holds it in place so that the post goes into the ground at the correct angle.

On the day of Francis's accident, the crew was using a post driver that was designed and manufactured by defendant DP Manufacturing, Inc. and sold by DP to Work Zone, the predecessor of Highway Technologies, in 1992.  Work Zone was succeeded by United Rentals.  In 2006, United Rentals obtained a quote from defendant GRT for repairs to this post driver.  GRT undertook the repairs and, in May 2007, GRT returned the post driver to United Rentals.  United Rentals was then succeeded by the machine's current owner, Highway Technologies.

During the extensive repair process, GRT reverse engineered and manufactured two parts for the machine:  an anvil and an adaptor cap.  GRT also repainted the machine and affixed warning stickers to it.  GRT also placed a sticker on the machine identifying GRT as the machine's manufacturer.

On the day of the accident, Francis and Byron Alexander, the post driver operator on his crew, were having trouble setting a post.  The post was going into the ground at an angle, so they decided to pull it out and start over.  After multiple attempts to get the post out of the ground, Alexander told Francis to go get some chains out of the truck so that they could finish the job.  As Francis was on his way back, the post ejected from the machine, striking Francis in the face and causing severe injuries. It is far from clear from the evidence submitted what caused the post to eject from the machine, however, given the theories of the plaintiff set forth below, it is not germane to consideration of this motion.

Francis has a claim for damages, his spouse has a claim for her loss of consortium and Francis's employer, Highway Technologies, intervened to recover workers' compensation/medical payments made to or on behalf of Francis.

## II.   THE STANDARD FOR ANALYZING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict in favor of the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact.[4]  All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[1]    *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (*per curiam*), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[2]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4]    *Washburn v. Harvey*, 504 F.3d at 508.

[5]    *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

-4-

claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

## III.   THE CONTENTIONS OF THE PARTIES

The plaintiffs generally contend that GRT and DP are liable for causing Francis's accident and injuries because the post driver was unreasonably dangerous under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq*. More specifically, the plaintiffs contend that the post driver was unreasonably dangerous in design because it lacked a chain or bar to prevent an I-beam from being ejected from the machine.   The plaintiffs also contend that the post driver was unreasonably dangerous because there was no warning that a beam could be ejected from the machine; because there was no warning that the adaptor cap and foot adaptor, which are critical safety features, should have been replaced only with parts manufactured by DP, the original equipment manufacturer;[8] and because the warning

---

[6]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[7]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8]      Such parts are referred to by the parties in their briefing as "OEM" or "OEM parts" because the initials "OEM" sometimes stand for "original equipment manufacturer."   Given the context used by the parties, the Court understands this acronym to refer to replacement parts that are manufactured by the manufacturer of the original part.   See, e.g., "[w]hen referring to automotive parts, OEM designates a replacement part made by the manufacturer of the original part." Wikipedia, http://en.wikipedia.org/wiki/original_equipment_manufacturer (last visited Jan. 31, 2013).   This, however, is actually contrary to the definition supplied for this term by several other sources.   See, e.g., "one that produces complex equipment (as a computer system) from components

that was given – cautioning that a person should not stay within ten feet of the machine while it was in use – was inadequate.

GRT makes two primary arguments in support of its motion.  First, GRT argues that it is not a "manufacturer" as that term is defined by the LPLA.  Since GRT did not design the post driver, it had no obligation to *redesign* the post driver while making extensive repairs to it and incorporate the safety features claimed necessary by the plaintiffs.  Second, while GRT admits it did reverse engineer and manufacture two replacement parts for the post driver, GRT argues neither part was on the machine at the time of the accident, and therefore, it cannot be liable as a matter of law.

## IV.   LAW AND ANALYSIS

Jurisdiction in this case is based on 28 U.S.C. § 1332, and therefore, the law of Louisiana is the applicable substantive law. The LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products.[9]  Under Louisiana law, the manufacturer of a product can be found liable only for damage: (a) proximately caused by a characteristic of its product; (b) if that characteristic

---

usually bought from other manufacturers."  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/oem (last visited Jan. 31, 2013).

[9]       La. R.S. 9:2800.52.

renders the product unreasonably dangerous; and (c) when the product is used in a reasonably anticipated manner.[10]  A product can be unreasonably dangerous only if (a) the product is unreasonably dangerous in construction or composition; (b) the product is unreasonably dangerous in design; (c) the product is unreasonably dangerous because an adequate warning about the product was not provided; or (d) the product is unreasonably dangerous because it does not conform to the manufacturer's express warranty.[11]  In this case, the plaintiffs contend only that the post driver is unreasonably dangerous in design and for lack of adequate warnings.

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:  (a) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (b) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer associated with adopting the alternative design and outweighed the adverse effect, if any, of the alternative design's effect on the utility of the product.[12]

---

[10]     La. R.S. 9:2800.54(A).

[11]     La. R.S. 9:2800.54(B).

[12]     La. R.S. 9:2800.56.

A product is unreasonably dangerous for inadequate warning if, at the time the product left its manufacturer's control, the product possessed a characteristic that might cause damage and the manufacturer failed to use reasonable care to provide an adequate warning about that characteristic and its danger to the product's users and handlers.[13]   The plaintiffs have the burden of proving each and every one of the elements of their products liability claim.[14]   The establishment of each LPLA element is a question of fact.[15]

## A.   IS GRT A MANUFACTURER?

A threshold issue in this case is whether GRT is a manufacturer, as that term is defined in the LPLA.  The statute defines the term "manufacturer" as follows:

> "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce.  "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:. . .  A person or entity who *labels a product as his own* or who otherwise holds himself out to be the manufacturer of the product.[16]

---

[13]   La. R.S. 9:2800.57(A).

[14]   La. R.S. 9:2800.54(D).

[15]   *Matthews v. Remington Arms Co., Inc.* 641 F.3d 635, 641 (5th Cir. 2011) citing *Ellis v. Weasler Engineering, Inc.* 258 F.3d 326, 331-32 (5th Cir. 2001).

[16]   La. R.S. 9:2800.53(1) [emphasis added].

Evidence presented by GRT indicates that, before any repair work on the post driver was undertaken, GRT estimated the likely cost of those repairs at an amount exceeding $30,000.[17]   The invoice for the repairs actually performed totalled $32,981.00.[18]  The invoice, quote, and repair record is thirty pages long.[19]  In addition, GRT fabricated two parts that may or may not have been on the machine at the time of the accident and one of which may or may not have played an integral role in the accident.  It is undisputed that extensive work was performed by GRT on this machine.   Details of the extensive work could satisfy the definition of remanufacturing, reconditioning or refurbishing.  The plaintiff contends that it does, the defendant contends that it does not.

Additionally, it is undisputed that GRT placed a sticker on the machine indicating that the machine was manufactured by GRT.  GRT contends, however, that this identifying sticker was "applied in error and was not applied with the intention of labeling the machine as its own or otherwise holding GRT. . . out to be the

---

[17]      Rec. Doc. 91-8.

[18]      Rec. Doc. 91-9 at 1.

[19]      Rec. Doc. 91-9.

manufacturer of the product."[20]  Whether this labeling was an inadvertent error or not is contested by the plaintiff which places the credibility of witnesses at issue.

Based upon the extent of the repairs performed by GRT and GRT's labelling of the machine, the Court finds that there is a genuine issue of material fact whether GRT is a manufacturer of the post driver and summary judgment is denied on that basis. Other genuine issues of material fact preclude summary judgment in GRT's favor on its second contention as well.

## B.   WAS GRT'S ADAPTOR CAP ON THE POST DRIVER AT THE TIME OF THE ACCIDENT?

GRT admits that it reverse engineered a new adaptor cap and anvil (also sometimes called a "follow block") for the post driver based upon the design of the adaptor cap originally designed and manufactured for the machine by DP.[21]  The adaptor cap and foot adaptor are considered by DP to be critical to the safety of the machine.  In its motion for summary judgment, **DP** argues that, with the original adaptor cap and foot adaptor, the machine could not eject a post and cause an accident like the one underlying this lawsuit.[22]  Recognizing the critical nature of the machine's adaptor cap, GRT argues that it cannot be held liable for the accident

---

[20]     Rec. Doc. 91-11 at 3-4.

[21]     Rec. Doc. 91-2 at 7; Rec. Doc. 91-10 at 5-6.

[22]     Rec. Doc. 103-2 at 9.

because the adaptor cap that it made for the post driver was not on the machine at the time of the accident and the plaintiffs, for that reason, cannot establish that the accident is causally related to an unreasonably dangerous condition of the post driver resulting from GRT's repair work.

There is a clear factual dispute as to whether the adaptor cap on the machine at the time of the accident was the one fabricated by GRT. Secondarily, there is evidence that the alternative design incorporating a secondary safety device as suggested by the plaintiff may have prevented the ejection of the post.

The plaintiffs argue that GRT's adaptor cap must have been on the post driver when the accident occurred because the machine was not used by Highway Technologies between the date that it was returned by GRT and the time of the accident.  GRT's corporate representative refers to photographs, not attached to the motion, and seems to suggest they depict parts not made by GRT that were on the machine at the time of the accident - although that conclusion is far from clear in the testimony.

At the time of the accident, the post driver was being operated by Byron Alexander.  Alexander testified that the first and only time that *he* operated this particular post driver was on the day of the accident.[23]  He did not say that no one at

---

[23]    Rec. Doc. 112-8 at 6, 9.

-11-

Highway Technologies had used the post driver after it was returned by GRT.  In fact, the plaintiff disputed Alexander's testimony, stating that, although he thought the post driver was brand new, he also thought that his crew – including Alexander – had used that same machine the week before the accident happened.[24]  Furthermore, no evidence was presented concerning whether the post driver was modified by Highway Technologies after it was returned by GRT.  From the evidence presented, the Court cannot draw the inference that the post driver was neither used nor modified by Highway Technologies after it was repaired by GRT or whether the cap was provided by GRT or not.

It is not clear how the post was caused to be ejected in the first place or whether the cap designed by DP, and reverse engineered by GRT, would have prevented the ejection by whatever mechanism caused it. The plaintiff's theory of the case is based in part upon the contention that a redundant safety device in the nature of a chain or bar that would close across the face of the rail assembly after an I-beam is inserted should have been included in the design of the post driver.  There is some evidence in the form of expert opinion that the redundant safety device may have prevented the accident. Therefore, there is a question of fact whether the absence of the redundant safety device is a characteristic of the product that rendered it

---

[24]      Rec. Doc. 112-9 at 5.

unreasonably dangerous even assuming the same type of cap designed by DP, reverse engineered by GRT, was in place at the time of the accident - a fact also in dispute.

### CONCLUSION

Because genuinely disputed issues of material fact remain, it would be inappropriate at this point to absolve GRT from all responsibility for the plaintiffs's accident.  Accordingly, GRT's motion for summary judgment is denied.

Signed at Lafayette, Louisiana, this 6th  day of February 2013.

_____
        PATRICK J. HANNA
        UNITED STATES MAGISTRATE JUDGE